UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CEDAR VALLEY EXTERIORS, INC.,                    Case No. 13-CV-2537 (PJS/TNL)

Plaintiff,

v.                                                                    ORDER

PROFESSIONAL EXTERIORS, INC.,

Defendant.

---

Dustin R. DuFault, DuFAULT LAW FIRM, P.C., for plaintiff.

Theodore J. Waldeck and Timothy W. Waldeck, WALDECK LAW FIRM P.A., for defendant.

Plaintiff Cedar Valley Exteriors, Inc. ("Cedar Valley") brought this action against defendant Professional Exteriors, Inc. ("Professional Exteriors"), alleging that Professional Exteriors infringed two registered service marks. Cedar Valley's service marks are highly unusual in two respects: First, both marks are for a color—specifically, the color orange. And second, both marks are extraordinarily broad. Together, the two marks appear to cover *any* use of *any* shade of orange in *any* article of clothing or *any* form of advertisement related to *any* aspect of the construction industry. Thus, for example, the use of orange safety vests on a construction site would appear to be encompassed by the registered marks—something that would no doubt come as a surprise to thousands of contractors.

How Cedar Valley was able to persuade the United States Patent and Trademark Office ("PTO") to register such marks is a mystery, particularly given that Cedar Valley has used only particular shades of orange; used it only on shirts, lawn signs, and a few other advertising items; and used it only in connection with a narrow slice of the construction industry. But the PTO did register the marks, and, as a result, this lawsuit raises a number of difficult legal and factual issues.

This matter is before the Court on the parties' cross-motions for summary judgment on Cedar Valley's claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44. For the reasons that follow, the Court grants the motions in part and denies them in part, and orders that Cedar Valley's registrations be substantially amended.

## I. BACKGROUND

Cedar Valley's business primarily consists of "repairs" to residences, including "roofing, siding, windows, [and] gutters." ECF No. 42-1 (Hausmann Dep.) at 45:8-48:18. These repairs are often necessitated by storm damage and paid for by homeowners' insurance. *Id.* at 44:3-9; ECF No. 64 (Mannella Decl.) ¶ 4. Cedar Valley was founded in Minnesota in 1998 and has expanded throughout the Midwest and into the eastern and southern regions of the United States, though its "base of customers" remains in the Twin Cities. Hausmann Dep. at 14:8-19, 61:7-62:1; Mannella Decl. ¶ 3.

Cedar Valley gets its customers through "door-knocking campaigns, use of yard signs, [and] referrals and other advertising," as well as through preferential relationships with insurance companies and their intermediaries.  Mannella Decl. ¶ 2; ECF No. 43-1 (Mannella Dep.) at 49:19-55:2.

Professional Exteriors is in the business of residential "remodel[ing] [and] restoration," including "[r]oofing, siding, windows, [and] gutters."  ECF No. 41-1 (Hildreth Dep.) at 30:16-33:12.  The majority of its work ("60 to 70 percent") consists of "insurance restoration" of storm-damaged homes.  *Id.* at 34:13-21. Professional Exteriors was founded in 2010, is headquartered in East Bethel, Minnesota, and performs its services primarily in the Twin Cities area.  *Id.* at 19:9-16, 58:3-24, 82:9-83:14, 158:16-17.  Most of Professional Exteriors' customers are homeowners who were referred by previous customers or who responded to advertisements.  *Id.* at 37:17-38:4.

Cedar Valley began using the color orange to promote its services in 1998. Hausmann Dep. at 65:18-21, 68:10-11; Mannella Dep. at 182:23-183:13.  Cedar Valley uses orange on the signs that it puts on customers' lawns and the shirts that its employees wear, as well as on flyers, door hangers, and other advertising materials.  *See* ECF Nos. 87-1, 87-2, 87-3, 87-4.  Cedar Valley picked orange "[b]ecause it stands out more than other colors," Hausmann Dep. at 65:24-67:21, and because orange was "the

most obnoxious, loud" color it could put on signs and shirts, Mannella Dep. at 182:23-183:2.

In 2008, Cedar Valley registered two service marks involving the color orange. Registration No. 3,429,642 ("the '642 mark") is for "the color orange as applied to yard signs and other advertising materials used in advertising the services."  ECF No. 1-1. The drawing depicts a solid-orange yard sign outlined by dotted lines.  *Id.*  Registration No. 3,429,643 ("the '643 mark") is for "the color orange as applied to clothing worn during the performance of the services."  ECF No. 1-2.  The drawing depicts a solid-orange short-sleeved polo shirt outlined by dotted lines.  *Id.*  The two marks define the "services" to include "building construction and repair; building inspection; construction and renovation of buildings; construction and repair of buildings; general construction contracting; installing siding; roofing contracting; roofing installation; roofing repair; [and] roofing services . . . ."  ECF No. 1-1; *see also* ECF No. 1-2.[1]  The PTO recognized the marks as "incontestable" in 2013 after Cedar Valley declared that it had continually used them for five years.  ECF Nos. 46-2, 46-3; *see also* 15 U.S.C. § 1065.

Since its founding in 2010, Professional Exteriors has also used the color orange on its advertising and promotional materials, including yard signs and shirts.  Hildreth Dep. at 103:23-105:2, 126:16-127:6.  In September 2011, Cedar Valley sent Professional

_____

[1]The two marks list the same services, but in different orders.

Exteriors a letter claiming that Professional Exteriors was infringing its service marks.

ECF No. 51-5.  The letter demanded that Professional Exteriors immediately stop using

orange in its advertising and destroy all existing orange advertising materials.  *Id.*

A second letter in July 2013 added a demand for $25,000 in damages.  ECF No. 51-6.

Professional Exteriors did not respond to either letter.

In September 2013, Cedar Valley sued Professional Exteriors for infringing its

registered marks under 15 U.S.C. § 1114 and for violating Minn. Stat. § 325D.44.[2]  In

───────────────────

[2]Cedar Valley's complaint also includes a count for infringement of common-law trademark rights under 15 U.S.C. § 1125(a), but Cedar Valley has forfeited any right to obtain summary judgment on this claim.

After oral argument on the summary-judgment motions, the Court ordered the parties to file supplemental briefs addressing the following question (among others): "Does plaintiff contend that it has common law or unregistered trademarks that provide broader rights than its registered marks?  If so, plaintiff should address the preceding questions [regarding the scope of the marks] as they apply to those common law rights.  Among other things, plaintiff should identify the precise scope of its common law rights and describe how, exactly, its common law rights differ from its statutory rights."  ECF No. 103 at 2.  The Court also advised:  "This probably goes without saying, but the parties should not merely answer these questions, but also cite case law and other legal authority that supports each of their answers."  *Id.* at 3.

Cedar Valley responded with a supplemental brief that devoted fewer than two full pages to this question.  Citing no legal authority, Cedar Valley generally argued that some of its common-law rights might be broader than the rights afforded by its registered marks, other common-law rights might be more limited, and still other common-law rights might be the same.  Cedar Valley vaguely concluded that "[t]he precise scope of the rights associated with each item will invariably depend on the specific item's use."  ECF No. 107 at 18-20.  In short, Cedar Valley said nothing of substance.

(continued...)

answer, Professional Exteriors alleged (among other things) that the use of the color orange in the construction industry is functional and that Cedar Valley's lawsuit was barred by the doctrine of laches.  Later, Professional Exteriors sought to amend its answer to add other defenses—including that Cedar Valley had perpetrated fraud on the PTO in procuring its registrations—but Magistrate Judge Tony N. Leung denied that motion.

Following discovery, Professional Exteriors moved for summary judgment, asserting that Cedar Valley's registered marks should be canceled for functionality and fraud, and alternatively asking the Court to define the scope of the marks.  Professional Exteriors also argued that consumers were not likely to confuse the two companies' marks, and that the testimony of Cedar Valley's expert (Gregory Anderson) on the use of orange in the exterior-remodeling industry should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Cedar Valley also moved for summary judgment, arguing that Professional Exteriors did not have sufficient

---

[2](...continued)
In its response, Professional Exteriors pointed out the obvious deficiencies in Cedar Valley's answer to the Court's question.  ECF No. 109 at 18-19.  Yet, in its reply brief, Cedar Valley said nothing further about its alleged common-law rights.  ECF No. 112.  Because Cedar Valley's briefing regarding its common-law claim was woefully inadequate, the Court finds that Cedar Valley has forfeited any right that it may have to obtain summary judgment on that claim.

evidence to prove its affirmative defenses and that Professional Exteriors had infringed the registered service marks as a matter of law.

The Court held a lengthy hearing on the summary-judgment motions.  At that hearing, the Court and the parties primarily focused on the threshold issue of the scope of Cedar Valley's marks.  The Court expressed concern about the potential breadth of the marks and about Cedar Valley's shifting position regarding their scope.  As the Court pointed out, the marks on their face appeared to cover any use of any shade of orange in any article of clothing or any form of advertisement related to any aspect of the construction industry.  At times, Cedar Valley appeared to agree; at other times, Cedar Valley appeared to argue that the marks were narrower, although Cedar Valley had difficulty explaining *how* they were narrower.  Following the hearing, the Court ordered the parties to submit supplemental briefs on a number of questions.

After reviewing the supplemental briefs, the Court concluded that it needed additional assistance before it could rule on the summary-judgment motions.  Because the marks were so unusual, the Court was confronting multiple issues that do not ordinarily arise in infringement actions, and on which neither the Court nor the parties were able to find much legal authority.[3]  The Court therefore suggested—and the

---

[3]*See generally* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:45.70 (4th ed. 2015) ("Largely unexplored in the case law is the question of the scope of exclusionary rights when a mark consists of a single color or a

(continued...)

parties agreed—that the Court should appoint an attorney who is knowledgeable about

trademark[4] law to serve as a court-appointed expert witness under Fed. R. Evid. 706.

ECF No. 114.  With the parties' consent, the Court appointed Scott W. Johnston of

Merchant & Gould.  ECF Nos. 116-18.  In order to minimize expense, the Court did not

ask Mr. Johnston to provide a written report, and the parties did not depose

Mr. Johnston.  Instead, after reviewing the court file, Mr. Johnston appeared at a hearing

and answered numerous questions from the Court and the parties.  Mr. Johnston's

testimony was extremely helpful, and the Court expresses its appreciation to him for

serving as an expert and to the parties for agreeing to his appointment.

At the hearing, Mr. Johnston described Cedar Valley's marks as "very unusual"

and the legal issues raised by those marks as "very hard."  ECF No. 131 (Hr'g Tr.) at

41:8.  Mr. Johnston opined that the "exceedingly broad" (*id.* at 11:6-7) marks should be

amended under the functionality and "phantom mark" doctrines.  Mr. Johnston also

---

[3](...continued)
combination of colors.  Is a registration showing a shovel with a reddish orange handle infringed by a rake with a handle in a yellowish orange color?  Is a candy package trade dress dominated by a dark purple oval infringed by a competitive candy package with a light purple circle?  These are some of the most unpredictable and troublesome issues of infringement in trademark law.")

[4]The Court appreciates that trademarks and service marks are technically distinct, but will sometimes follow the popular usage of "trademark" as an umbrella term to refer collectively to trademarks, service marks, and related concepts. *See* 1 McCarthy, *supra*, § 4:19.

recommended granting Cedar Valley's motion for summary judgment because, in his view, the record conclusively established that consumers were likely to confuse the two companies' marks.

The Court agrees with Mr. Johnston that the registrations should be amended. But because the Court finds that material facts remain in dispute, the Court respectfully disagrees with Mr. Johnston's recommendation that the Court find infringement as a matter of law.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

*B.  Scope of the Marks*

Before the Court can assess the merits of Cedar Valley's infringement claims and Professional Exteriors' defenses, the Court must first determine the scope of the registered marks.  That is, before the Court can answer such questions as "how strong are the marks?" and "how similar are Professional Exteriors' marks to Cedar Valley's marks?," the Court must first determine the precise scope of Cedar Valley's registered marks.

The Court agrees with Mr. Johnston that the marks are "unusual" and "exceedingly broad as written."  Hr'g Tr. 10:22-11:7.  The Court also agrees that the marks must be amended to comply with the functionality and phantom-mark doctrines.

1.  Functionality

The functionality doctrine prohibits the registration of marks that encompass a functional feature of a product—that is, a feature that is essential to the use or purpose of the product, affects the cost or quality of the product, or would put competitors at a significant disadvantage unrelated to reputation if those competitors could not use the feature themselves.  *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-65 (1995); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982).  Without the doctrine, a registrant could use trademark law to secure a monopoly on a functional feature and stifle competition.  *Qualitex,*  514 U.S. at 164-65.

The functionality doctrine applies to color marks. *Id.* at 169-70; *see also*
1 McCarthy, *supra*, § 7:49.  The doctrine bars, for example, the registration of orange as applied to earplugs, because orange is particularly visible and facilitates safety checks (i.e., it makes it easier to confirm that employees are wearing earplugs).  *See In re Howard S. Leight & Assocs., Inc.*, 39 U.S.P.Q.2d 1058, at *2-3 (T.T.A.B. 1996).  And the doctrine bars the registration of orange or yellow as applied to payphones, because those colors make payphones easier to find in an emergency.  *See In re Orange Commc'ns Inc.*, 41 U.S.P.Q.2d 1036, at *6 (T.T.A.B. 1996).

The Court agrees with Mr. Johnston that the very broad written descriptions of Cedar Valley's marks encompass the functional use of orange.  *See* Hr'g Tr. 67:25-68:25. Specifically, the descriptions of the marks purport to encompass orange "clothing" of any type and any orange "advertising materials" used in connection with the many listed services.  Those services encompass the entire construction industry, from construction of a skyscraper to construction of a doghouse:  "building construction and repair; building inspection; construction and renovation of buildings; construction and repair of buildings; [and] general construction contracting . . . ."  ECF No. 1-1.  Read literally, Cedar Valley's marks would cover the orange safety vests commonly worn by construction workers (because a vest is an article of "clothing") and even some of the

orange signs at construction sites (because some signs could be deemed "advertising materials").

Professional Exteriors has submitted unrebutted evidence that orange serves an important (non-reputation-related) safety function in the construction industry.  Most notably, Professional Exteriors offers an expert report by Arnold Kraft, a Certified Safety Professional, who explains that "[o]range is commonly used in a wide var[iet]y of activities, for warning employees, customers, and[/]or the general public of potentially hazardous conditions."  ECF No. 46-5 at 5.  For example, orange is used in construction sites on cones, vests, and signs to make the workers and hazards more visible; because of the use of orange, the public is better warned of potential danger, while workers are better protected from accidents such as being struck by motorists. *See id.* at 2, 4-5.

Although the record leaves no doubt that orange serves an important safety function on large construction sites—such as the site of a new hotel or office building, or even the site of a new house where, say, heavy machinery is used to excavate a basement—the record is considerably less clear about whether orange serves the same safety function in connection with the bulk of the work that Cedar Valley and Professional Exteriors perform:  repairing and replacing residential roofing, siding, windows, and gutters.  At this point, then, the Court finds that orange is functional in

-12-

most (but not necessarily all) of the construction industry because it serves an important safety function.[5]

As written, the registered marks cover functional uses of the color orange in the construction industry; competitors of Cedar Valley would be placed at a significant non-reputation-related disadvantage if they could not use orange on clothing, signs, and other items.  Under the functionality doctrine, then, the Court will order that Cedar Valley's registrations be limited to only the following services listed in the registrations: "installing siding; roofing contracting; roofing installation; roofing repair; [and] roofing services."  ECF No. 1-1.

### 2.  Phantom Marks

Cedar Valley's marks run afoul of another rule of trademark law:  the prohibition against phantom marks.  "[U]nder the Lanham Act and the rules promulgated thereunder, a trademark application may only seek to register a *single* mark."  *In re Int'l*

---

[5]The record also contains some evidence that, in addition to its safety function in the construction industry, orange serves an aesthetic function in advertising (i.e., orange is particularly effective in catching consumers' eyes or in making consumers think of construction).  *See, e.g.*, ECF No. 46-5 at 1; Hildreth Dep. 142:24-143:1, 144:8-18.  Certain aesthetic uses of color can be functional and unregisterable.  *See Qualitex*, 514 U.S. at 169-70 (citing *Deere & Co. v. Farmhand, Inc.*, 560 F. Supp. 85, 98 (S.D. Iowa 1982), *aff'd*, 721 F.2d 253 (8th Cir. 1983) (per curiam), for the example of green being functional for farm machinery because customers want their machinery to match other green farm equipment).  But the aesthetic function of orange is contested in this case; for instance, the parties do not agree about the availability and effectiveness of other colors that might attract attention or call to mind the construction industry.

*Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1366 (Fed. Cir. 1999) (emphasis in original).

This is because the relevant statutes and regulations speak in terms of registering

"*a trademark*" or "*the mark.*"  *Id.* (emphasis in original) (quoting 15 U.S.C. § 1051;

37 C.F.R. § 2.51).  Accordingly, a mark may not contain a variable or "phantom"

element that could represent multiple marks as the element changes (e.g., the mark

"LIVING XXXX FLAVOR" could encompass "LIVING STRAWBERRY FLAVOR,"

"LIVING CILANTRO FLAVOR," or any number of other similar permutations).  *Id.* at

1363-64, 1366; *see also* TMEP § 1214.01 (Oct. 2015 ed.); 3 McCarthy, *supra*, § 19:61.50.

The prohibition against phantom marks serves the primary purpose of federal

trademark registration, which is providing notice to the public of the registrant's

ownership of the mark.  In the words of the Federal Circuit:

> In order to make this constructive notice meaningful, the mark, as registered, must accurately reflect the way it is used in commerce so that someone who searches the registry for the mark, or a similar mark, will locate the registered mark.  "Phantom" marks with missing elements . . . encompass too many combinations and permutations to make a thorough and effective search possible.  The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration.

*Int'l Flavors*, 183 F.3d at 1368 (footnote omitted); *see also* TMEP § 1214.01; 3 McCarthy,

*supra*, § 19:61.50.

-14-

Color marks are generally subject to the phantom-mark rule. *See OgoSport, LLC v. Maranda Enters., LLC*, No. 10-C-0155, 2012 WL 683111, at *7 (E.D. Wisc. Mar. 2, 2012) ("A mark that contains a changeable element, such as the relatively contrasting colors in this case, is unregisterable." (citing *Int'l Flavors*)); TMEP § 1202.05(c) ("Granting an application for registration of color in the abstract, without considering the manner or context in which the color is used, would be contrary to law and public policy, because it would result in an unlimited number of marks being claimed in a single application." (citing *Int'l Flavors*)). And thus, on their face, Cedar Valley's marks are inconsistent with the phantom-mark rule. Obviously, a registration that covers orange applied to shirts and orange applied to pants and orange applied to socks and orange applied to shoes (and on and on) is not limited to a single mark. *See* Hr'g Tr. 11:17-17:21.

There is, however, an exception to the phantom-mark rule that, according to Cedar Valley, saves its marks. Specifically, the PTO's Trademark Manual of Examining Procedure ("TMEP")[6] describes a special exception to the phantom-mark rule for

---

[6]The Federal Circuit has said that the TMEP is entitled to some deference: "While the TMEP is not established law, but only provides instructions to examiners, it does represent the PTO's established policy . . . that is entitled to our respect." *In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006). Accordingly, federal-court decisions routinely rely on the TMEP, *see, e.g., Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869, 873 (8th Cir. 1994), and both Cedar Valley and Professional Exteriors cite the TMEP liberally.

(continued...)

service marks consisting of a color.  The TMEP permits an applicant who "seeks to register a single color as a service mark used on a variety of items not viewed simultaneously by purchasers" to represent the mark as "a solid-colored square with a dotted peripheral outline . . . ."  TMEP § 1202.05(d)(ii).  This exception to the phantom-mark rule is based on the notion that a color service mark can be applied to a variety of objects ("e.g., stationery, uniforms, pens, signs, shuttle buses, store awning, and walls of the store"), but still create for the consumer a unified "distinct commercial impression." *Id.* (citing *In re Thrifty, Inc.*, 274 F.3d 1349 (Fed. Cir. 2001); *In re Chem. Dynamics Inc.*, 839 F.2d 1569 (Fed. Cir. 1988)).

For example, Homer TLC, Inc. has registered the color orange as used by Home Depot stores.  That service mark "consists of the color orange used as a background for advertising, promotional materials, signage, and labels" for a number of "installation services" (including, notably, the installation of "roofing" and "seamless gutters") and in other contexts.  The drawing of the mark depicts a square made out of dotted lines that is "lined"[7] for the color orange.  Registration No. 2,276,946, *available at*

---

[6](...continued)
Citations to the TMEP in this order refer to the current (October 2015) edition. The parties do not contend that the edition in force when Cedar Valley registered its marks (the 2007 edition) differs in any material respect, and the Court has not discovered any material differences between the versions.

[7]Before the PTO accepted drawings in color, black-and-white "linings" or cross-
(continued...)

http://tsdr.uspto.gov/documentviewer?caseId=sn74695201&docId=ORC20060208182804

#docIndex=19&page=1.

According to Mr. Johnston, there is some doubt about whether this special

exemption from the phantom-mark rule is valid:

> [O]ne mark per registration is the rule.  There's an exception
> to the rule for this very special category of single color marks
> in a service sector.  It's very unusual.  It's kind of
> questionable whether or not it provides adequate notice,
> whether it's a phantom mark.  There's actually a reference in
> the TMEP about the fact that this hasn't been tested.

Hr'g Tr. 32:17-23; *see also id.* at 33:9-12 (agreeing that the exception is "recognized as

untested").

The Court need not decide whether the special exemption in the TMEP is valid,

however, because even if the exemption is valid, neither of Cedar Valley's registrations

fits within it.  *See id.* at 29:7-10 ("I think because they didn't follow that particular

convention about the square with the peripheral line, they don't get to avail themselves

of that rule."); *id.* at 32:24 ("This does not fit the exception."); *id.* at 33:13-16 (agreeing

that the Court need not address the validity of the exception because the Cedar Valley

marks "do[]n't fit within it.").  The *text* of the registrations indicates that Cedar Valley

was seeking to "register a single color as a service mark used on a variety of items not

---

[7](...continued)
hatchings were used to indicate color.  1 McCarthy, *supra*, § 7:45.30.

viewed simultaneously by purchasers."  TMEP § 1202.05(d)(ii).  But neither of the

*drawings* is "a solid-colored square with a dotted peripheral outline . . . ."  *Id.*  Instead,

the drawing on the '642 mark depicts a lawn sign, while the drawing on the '643 mark

depicts a short-sleeved polo shirt.

In the case of a discrepancy between the drawing and the written description of a

color mark, the drawing controls the text.  3 McCarthy, *supra*, § 19:58.50; *see also* 37

C.F.R. § 2.52 ("A drawing depicts the mark sought to be registered.").  This is true with

respect to both the objects to which the color is applied and the shade of the color.

*See* TMEP § 1202.05(g) (citing the Federal Circuit as holding that "the drawing

controlled, such that the [service-mark] application was for the color . . . applied to" the

particular item depicted in the drawing); *id.* § 807.07(c) ("When the color shown on the

drawing page in a paper application, or on the digitized image of the drawing in [an

electronic] application, is inconsistent with the color claimed in the written application

(e.g., the mark is shown in blue on the drawing, but the color claimed is orange), the

drawing controls.").

The Federal Circuit applied these principles in *In re Thrifty, Inc.*, 274 F.3d 1349

(Fed. Cir. 2001), a case that is strikingly similar to this case.  In *Thrifty*, the Federal

Circuit narrowed the scope of a proposed service mark based on a drawing that did not

conform to the convention of the dotted-lined square.  Thrifty sought to register as a

service mark the color blue used in connection with car rentals and related services.

*Id.* at 1350.  The application's drawing showed a building ("most likely depicting a

Thrifty 'vehicle rental center'") in dotted lines with a colored "upper wall."  *Id.*  Thrifty

later attempted to supplement its description of the proposed mark to include the

following text:  "The color blue is used on vehicle rental centers, signs, vehicles,

uniforms, and in other advertising and promotional materials to show that the color

blue identifies and distinguishes applicant's services."  *Id.* at 1351.  But the PTO rejected

the amendment as inconsistent with the drawing and as describing more than a single

mark.  *Id.*

The Federal Circuit affirmed the PTO.  The Court of Appeals determined that the

drawing of the specific object (the building) controlled the broader proposed language

that included other objects.  *Id*.  The court elaborated:

> [T]he drawing convention for a service mark consisting of a
> color is to show a generic shape (e.g., a square) of a solid
> color having a dotted peripheral outline.  When Thrifty
> submitted its original application including a drawing
> showing the color blue applied to a particular object, Thrifty
> indicated that its proposed service mark had a narrower
> scope than if it had followed this convention.
>
> In contrast to the original application, Thrifty's
> proposed amendment describes the mark as including the
> color blue applied to a wide variety of objects (e.g.,
> buildings, vehicles, uniforms, signs, keychains, pencils and
> pens, brochures, and playing cards).  The multiple
> impressions created by the wide variety of objects sought to

> be covered under the proposed description differ
> significantly from the original mark of a color placed on a
> building.

*Id.* at 1353.

This case arises in a different procedural posture, but the controlling principle is

the same:  The discrepancy between the drawing and the written description on each of

Cedar Valley's registrations must be resolved in favor of the drawing.  Because neither

drawing depicts "a solid-colored square with a dotted peripheral outline," TMEP

§ 1202.05(d)(ii), neither registration falls within the exception to the phantom-mark rule

found in the TMEP.

To hold otherwise would be to ignore the public-notice function of trademark

law.  Cedar Valley's marks cannot be allowed to encompass *any* type of advertising

materials and *any* article of clothing, because the drawings in the registrations depict

only a yard sign and a polo shirt, and thus indicate to anybody who finds Cedar

Valley's registrations in a trademark search that the marks are limited to those

particular objects.  The drawings do not give anyone wanting to establish their own

service marks adequate notice that Cedar Valley's marks encompass more than lawn

signs and polo shirts.  *See* Hr'g Tr. 17:18-21 ("I don't think it meets this unusual

exception to the single mark rule and I believe, then, that the public is entitled to believe

this covers [only] a yard sign.").  Just as the drawing of the building limited the general

term "advertising and promotional materials" in the *Thrifty* application, so the drawings of the yard sign and polo shirt limit the general terms "advertising materials" and "clothing" in Cedar Valley's marks.

As noted, the drawings also control the shade of orange covered by the marks. Although the descriptions of the marks simply state that they consist of "the color orange"—which could be read to include any conceivable shade of orange—the registrations in fact cover only the particular shade of orange depicted in the drawings. Obviously, though, a competitor's use of a similar (but not identical) shade of orange could nevertheless confuse a consumer and thus infringe the mark.  *See* 1 McCarthy, *supra*, § 7:45.70 ("If the decision maker thinks that the ordinary purchaser or user will see the color as a source indicator, and see them as close enough as to be likely to confuse source or affiliation, then infringement will be found[,] even though the color shades are not identical.").

Finally, the drawings control the particular manner in which orange is used on yard signs and polo shirts.  The drawings depict a solid-orange yard sign and a solid-orange polo shirt; they do not depict yard signs or polo shirts that, for example, use orange stripes or orange trim or orange lettering against a non-orange background. Again, though, it is possible that a competitor's use of a partially orange yard sign or polo shirt could confuse a consumer and thus infringe.

3.   Amendment

Because Cedar Valley's registrations do not conform to the functionality and

phantom-mark doctrines, the Court agrees with Mr. Johnston that their written

descriptions should be amended.  *See* Hr'g Tr. 30:11-32:7.  Federal courts have authority

over trademark registrations pursuant to 15 U.S.C. § 1119:

> In any action involving a registered mark the court may
> determine the right to registration, order the cancelation of
> registrations, in whole or in part, restore canceled
> registrations, and otherwise rectify the register with respect
> to the registrations of any party to the action.  Decrees and
> orders shall be certified by the court to the Director, who
> shall make appropriate entry upon the records of the Patent
> and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119.  The power to partially cancel registrations and to "rectify the register"

under § 1119 includes the authority to "redefine the scope of the registration."

5 McCarthy, *supra*, § 30:109; *see also Christian Louboutin S.A. v. Yves Saint Laurent Am.*

*Holdings, Inc.*, 696 F.3d 206, 228 (2d Cir. 2012) (directing PTO to "modify" and "limit"

scope of mark according to court's analysis of secondary meaning).

Therefore, the Court orders that Cedar Valley's registrations be amended to

conform to the functionality and phantom-mark rules[8] as follows:

---

[8]Mr. Johnston testified that the Court had authority to "rectify the register" on
these particular grounds notwithstanding the incontestable status of Cedar Valley's
marks.  *See* Hr'g Tr. 31: 18-19 ("Incontestability doesn't impact your authority to amend
or rectify or cancel or resurrect a registration."); *see also id.* at 43:7-17, 64:20-66:22.  Cedar

(continued...)

- Registration Nos. 3,429,642 and 3,429,643 are limited to the following services:  installing siding, roofing contracting, roofing installation, roofing repair, and roofing services.

- Registration No. 3,429,642 is limited to the color orange as applied to the entire surface of a yard sign.

- Registration No. 3,429,643 is limited to the color orange as applied to the entire surface of a short-sleeved polo shirt.

*C.  Likelihood of Confusion*

Having defined the scope of Cedar Valley's registered marks and amended the registrations' written descriptions to reflect that scope, the Court proceeds to the merits of Cedar Valley's infringement claims.  To succeed on a claim for trademark infringement, a plaintiff must demonstrate a likelihood of confusion.  In other words, the plaintiff must establish that it is likely that a consumer exposed to the alleged infringer's mark would confuse it with the owner's mark, and thereby wrongly conclude that the infringer's goods or services have some connection to the owner.  *See, e.g.*, *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 887 (8th Cir. 2014).  The Court's analysis is guided by the so-called "*SquirtCo* factors":

---

[8](...continued)
Valley has not argued to the contrary, despite having been given the opportunity to do so both at the hearing and in post-hearing briefing.

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Id.* (citing *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)).  Professional Exteriors asserts—and Cedar Valley does not seem to contest—that Cedar Valley's state-law claims under Minn. Stat. § 325D.44 should be analyzed similarly to Cedar Valley's federal trademark claims.  *See also DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003).

The Court respectfully disagrees with Mr. Johnston that Cedar Valley is entitled to summary judgment on its infringement claim; instead, the Court finds that facts that are material under *SquirtCo* are genuinely in dispute.  For instance, the parties have submitted conflicting evidence regarding the commercial strength of the marks and the degree to which the parties compete.  Moreover, several of the *SquirtCo* factors appear to militate against a finding of infringement.  For example, there is no evidence that Professional Exteriors intended to pass off its services as those of Cedar Valley, there is no evidence of actual confusion, and it is likely that consumers would pay close attention to the origin of the services (given that the services involve doing extensive work on consumers' homes).

The Court therefore denies both parties' motions for summary judgment on Cedar Valley's infringement claims; those claims will have to be tried.

### D.  Affirmative Defenses

### 1.  Functionality

The Court has already amended the registered marks to conform to the functionality doctrine; as amended, the marks apply only to the use of orange in connection with "installing siding, roofing contracting, roofing installation, roofing repair, and roofing services."  Professional Exteriors also raises functionality as an affirmative defense to Cedar Valley's infringement claims.  In other words, Professional Exteriors argues that, even with respect to siding and roofing work, orange is functional both on clothing and in advertising.  Professional Exteriors moves for summary judgment on this ground.

As the Court has already explained, however, the Court finds that there are factual disputes about the functionality of the color orange when used in connection with the roofing and siding work that is encompassed by the amended registrations. The Court therefore denies both parties' motions for summary judgment on the defense of functionality.

2.  Laches

Professional Exteriors also moves for summary judgment on its defense of

laches.  Laches supplies a defense in a trademark case when the plaintiff "inexcusably

delays" bringing suit and "unduly prejudices" the defendant.  *Masters v. UHS of Del.,*

*Inc.*, 631 F.3d 464, 469 (8th Cir. 2011) (quoting *Hubbard Feeds, Inc. v. Animal Feed*

*Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999)).

One factor that helps courts measure whether a plaintiff's delay is

"inexcusabl[e]" is whether the plaintiff filed suit within the statute of limitations

applicable to analogous state-law claims.  Cedar Valley asserts (and Professional

Exteriors does not contest) that the applicable period is six years under Minn. Stat.

§ 541.05.  *See also 3M v. Beautone Specialties, Co.*, 82 F. Supp. 2d 997, 1003-04 (D. Minn.

2000); 6 McCarthy, *supra*, §§ 31:23, 31:33 n.9.

One factor that helps a court assess whether any prejudice to the defendant was

"undue[]" is whether the defendant had notice that the plaintiff objected to the use of

the allegedly infringing mark.  Such notice affords the defendant an opportunity to

discontinue use of the mark and thereby avoid prejudice caused by the plaintiff's delay

in filing suit.  Accordingly, "forewarning of a plaintiff's objections generally prevents a

defendant from making a laches defense."  *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d

855, 859 (8th Cir. 2009); *see also* 6 McCarthy, *supra*, § 31:12.

Cedar Valley learned in July 2011 that Professional Exteriors was using orange to promote its business.  ECF No. 45-1 at 9.  Assuming that the analogous statute of limitations would have begun to run on that date, Cedar Valley had nearly two-thirds of the six-year limitations period to spare when it filed suit in September 2013; indeed, the limitations period has *still* not run.  This is clearly not "inexcusabl[e] delay[]." *Masters*, 631 F.3d at 469.  Further, Cedar Valley's cease-and-desist letters put Professional Exteriors on notice that Cedar Valley objected to its use of orange. Professional Exteriors cannot claim "undu[e] prejudice[]" when it continued to promote itself using solid-orange shirts and solid-orange lawn signs, notwithstanding the warning letters that it had received from Cedar Valley.  *Id.*  The Court also notes that, despite the availability of numerous shades of orange, Professional Exteriors continued to use a shade of orange that appears to be nearly identical to the shade of orange protected by Cedar Valley's amended marks.

For these reasons, the Court denies Professional Exteriors' motion and grants Cedar Valley's motion for summary judgment on the defense of laches.

### 3.  Fraud

Professional Exteriors next moves for summary judgment on the basis of fraud. Fraud is an affirmative defense that must be pleaded—and pleaded with particularity— in the defendant's answer.  *See* Fed. R. Civ. P. 8(c)(1) & 9(b).  Professional Exteriors'

answer to Cedar Valley's complaint does not include any allegation of fraud.

Magistrate Judge Leung issued a pretrial scheduling order that set March 15, 2014 as the deadline for the parties to amend their pleadings.  ECF No. 19.  On September 16, 2014—six months after the deadline had passed—Professional Exteriors moved under Fed. R. Civ. P. 15(a) to amend its answer to include the defense that Cedar Valley had perpetrated a fraud on the PTO in procuring its registrations.  ECF Nos. 23, 25.  Cedar Valley objected to the motion as untimely.  ECF No. 28.  Judge Leung denied the motion, ruling that, notwithstanding the fact that the motion was ostensibly under Rule 15(a), Professional Exteriors needed to show good cause to modify the pretrial scheduling order under Rule 16(b)(4), and Professional Exteriors had failed to establish good cause because it had not acted diligently to pursue discovery on the fraud issue. ECF No. 66.

Professional Exteriors does not directly challenge Judge Leung's ruling, but asserts that it should now be permitted to advance a fraud defense under Fed. R. Civ. P. 15(b)(2), which provides:  "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."

It is true that Rule 15(b)(2) may permit amendment even after the denial of an earlier motion to amend under Rules 15(a) or 16(b).  *See Am. Family Mut. Ins. Co. v.*

*Hollander*, 705 F.3d 339, 350 (8th Cir. 2013).  But Rule 15(b)(2), by its terms, applies to issues that are "*tried*"; in fact, the heading of subsection (b) is "Amendments *During and After Trial*" (as contrasted with the heading of subsection (a):  "Amendments *Before Trial*").  Rule 15(b)(2) does not apply at the summary-judgment stage or at any other stage before trial.  *See Cook v. City of Bella Villa*, 582 F.3d 840, 852 (8th Cir. 2009) (" . . . Rule 15(b) provides parties with methods to amend a pleading any time during or after trial, and is therefore not directly applicable to this situation where the parties intended to amend the complaint before trial . . . ."); *Oglala Sioux Tribe v. Hallett*, 708 F.2d 326, 329 n.5 (8th Cir. 1983) ("Rule 15(b), on its face, serves to conform the pleadings to the evidence '[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties.'  We are not convinced that this rule can be used in a pretrial motion as the Tribe contends." (alteration in original)).  *But see Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 327 n.7 (3d Cir. 2012) (noting circuit split on issue).

Moreover, the text of Rule 15(b)(2) requires that the opposing party "consent"(either "express[ly] or "implied[ly]") to trying the new issue.  *Compare Culpepper v. Vilsack*, 664 F.3d 252, 259 (8th Cir. 2011) (amendment not proper when opposing party repeatedly objected to inclusion of proposed claims), *with Hollander*, 705 F.3d at 350 (amendment proper when opposing party failed to object to evidence relevant to unpleaded claim).  Cedar Valley has not explicitly or implicitly agreed to try

the issue of fraud; to the contrary, Cedar Valley has consistently objected to any attempt by Professional Exteriors to add a fraud defense.

For these reasons, the Court will not allow Professional Exteriors to assert a fraud defense.  The Court therefore denies Professional Exteriors' motion and grants Cedar Valley's motion for summary judgment on the defense of fraud.

### 4.  Other Defenses

Cedar Valley contends that, because its marks are incontestable, Professional Exteriors may not argue that the marks are invalid because they never acquired distinctiveness or secondary meaning.  *See* 15 U.S.C. § 1115.  Professional Exteriors appears to agree.  Professional Exteriors points out, however, that the first *SquirtCo* factor is "the strength of the owner's mark."  *Lovely Skin*, 745 F.3d at 887.  Professional Exteriors argues that the incontestable status of Cedar Valley's marks does not prevent Professional Exteriors from arguing that the marks are *weak* because they lack distinctiveness or secondary meaning.  Cedar Valley appears to agree.

Finally, Cedar Valley argues—and Professional Exteriors does not dispute—that Professional Exteriors has no evidence to support its defenses of estoppel, waiver, acquiescence, and failure to state a claim on which relief may be granted.  The Court therefore grants Cedar Valley's motion for summary judgment on these defenses.

*E.* Daubert *Motion*

Finally, Professional Exteriors moves to exclude Gregory Anderson's expert testimony regarding the use of orange in the exterior-remodeling industry under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  As the Court explained on the record at the February 23, 2015 hearing, however, Anderson's testimony is not categorically admissible or categorically inadmissible, and the Court will therefore address the admissibility of Anderson's testimony at trial on a question-by-question basis.  *See* ECF No. 106 at 49-51.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1.      The Clerk of Court is directed to notify the Director of the United States Patent and Trademark Office of this order, which amends U.S. Trademarks Registration Nos. 3,429,642 and 3,429,643 pursuant to 15 U.S.C. § 1119 as follows:

   a.      Registration Nos. 3,429,642 and 3,429,643 are limited to the following services:  installing siding, roofing contracting, roofing installation, roofing repair, and roofing services.

      b.    Registration No. 3,429,642 is limited to the color orange as applied to the entire surface of a yard sign.

      c.    Registration No. 3,429,643 is limited to the color orange as applied to the entire surface of a short-sleeved polo shirt.

2.    Professional Exteriors' renewed motion for summary judgment [ECF No. 123] is GRANTED IN PART AND DENIED IN PART as follows:

      a.    Professional Exteriors' motion for a declaration of the scope of Cedar Valley's marks is GRANTED to the extent that the marks are amended as described in ¶ 1 of this order.

      b.    Professional Exteriors' motion is DENIED in all other respects.

3.    Cedar Valley's renewed motion for summary judgment [ECF No. 127] is GRANTED IN PART AND DENIED IN PART as follows:

      a.    Cedar Valley's motion for summary judgment on Professional Exteriors' defenses of laches, fraud, lack of distinctiveness or secondary meaning, estoppel, waiver, acquiescence, and failure to state a claim is GRANTED.

      b.    Cedar Valley's motion is DENIED in all other respects.

4.    Professional Exteriors' renewed motion to exclude the testimony of Gregory Anderson [ECF No. 124] is DENIED WITHOUT PREJUDICE.

Dated:  June 29, 2016                         s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge